## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**EBAIDE ESOIMEME**
**129 Wheatfield Drive**
**La Plata, MD  20646**
**Plaintiff,**

v.

**ALEJANDRO MAYORKAS,**
**Secretary, U.S. Dept. of**
**Homeland Security**

**Serve:**
**Alejandro Mayorkas, Secretary,**
**U.S. Dept. of Homeland**
**Security**
**2707 Martin Luther King, Jr.,**
**Avenue, S.E.**
**Washington, D.C.  20528-0525**

**Serve: Merrick Garland, U.S.**
**Attorney General**
**950 Pennsylvania Avenue, N.W.**
**Washington, D.C.  20530**

**Serve: Matthew M. Graves,**
**United States Attorney for**
**District of Columbia**
**555-4th Street, N.W.**
**Washington, D.C. 20530**

**ADMIRAL LINDA L. FAGAN,**
**Commandant of the United**
**States Coast Guard**
**2707 Martin Luther King, Jr.,**
**Avenue, S.E.**
**Washington, D.C.  20528-0525**

**Case No.:**

1

**Serve:**
**Admiral Linda L. Fagan**
**Commandant of the United**
**States Coast Guard**
**2707 Martin Luther King, Jr.,**
**Avenue, S.E.**
**Washington, D.C.  20528-0525**

**Serve: Merrick Garland, U.S.**
**Attorney General**
**950 Pennsylvania Avenue, N.W.**
**Washington, D.C.  20530**

**Serve: Matthew M. Graves,**
**United States Attorney for**
**District of Columbia**
**555-4th Street, N.W.**
**Washington, D.C. 20530**

**Defendant.**

## CIVIL COMPLAINT FOR EMPLOYMENT DISCRIMINATION

**COMES NOW** Plaintiff, **EBAIDE ESOIMEME** ("Plaintiff" or "Ms.

Esoimeme"), by counsel, and hereby files this Civil Complaint against **Alejandro**

**Mayorkas, Secretary, U.S. Department of Homeland Security** (referred to

herein as "DHS") **and Admiral Linda L. Fagan Commandant of the United**

**States Coast Guard** (referred to herein as the "USCG").[1]

## JURISDICTION AND VENUE

1.    This action is brought under Title VII of the Civil Rights Act of 1964,

as amended, 42 U.S.C. 2000e, *et seq*. ("Title VII"), for unlawful discrimination and

employment practices against Plaintiff because of her race (Black), national origin

---

[1] Note, herein, DHS and USCG are collectively referred to as the "Agency" or "Defendant."

(Nigerian), gender (Biological female), retaliation (prior and ongoing EEO activity) or for establishing a hostile working environment.

2.    Jurisdiction is based upon a Federal Question in that this claim constitutes a case or controversy arising under the Constitution and laws of the United States of America and original jurisdiction exists pursuant to 28 U.S.C. Section 1331.

3.    Venue is proper in this Court pursuant to 26 U.S.C. Section 1391(e) because the Defendant, its Secretary and Commandant are official residents of the District of Columbia and a significant number of the unlawful transactions, occurrences and offenses related to this matter were committed in the District of Columbia.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

4.    Plaintiff's national origin is the Republic of Nigeria.  She is a Black, biological female.[2]

5.    Since March 2020, Plaintiff has served as a civilian employee of the USCG, Office of Internal Control, CG-85.  She is an accountant, GS-0510-14,[3] serving in the capacity as a Team Lead.  Her official duty station is 2703 Martin Luther King, Jr., Avenue, S.E., Washington, D.C.  However, prior to her Telework

---

[2] Note, references to the underlying EEO Reports of Investigation ("ROI") will be referred to as follows.  The ROI submitted on December 8, 2022, regarding case HS-USCG-02411-2022, will be referred to as "ROI-1." The ROI submitted on July 10, 2023, regarding Case No: HS-USCG-00810-2023, will be referred to as "ROI-2."

[3] According to her position description, the purpose of the position is to coordinate, direct, and review internal controls test work by verifying and validating Coast Guard wide audit remediation and corrective action plans related to material weaknesses and significant deficiencies under the Chief Financial Officers Act and [the DHS] Security Accountability Act."  ROI-1, 358.

Agreement being wrongfully terminated, as more particularly described herein, her telework site was her residence.

6.     Initially, on May 24, 2022, Plaintiff contacted an Agency EEO counselor *via* email complaining of discrimination executed by her white, male superiors. (ROI-1, 53). Indeed, on May 27, 2022, Plaintiff met with the EEO counselor for further advisement regarding the EEO process wherein she identified her superiors, including Responsible Management Official ("RMO"), Talmadge Seaman ("Mr. Seaman"), by name, race and other characteristics and had no objection to the EEO counselor informing the RMOs of her EEO concerns.

7.     On or about July 6, 2022, Plaintiff, again made contact with the Agency's EEO counselor, who in this instance was Ms. Carolyn Hunter (the "EEO Counselor Hunter") and commenced receiving traditional EEO counseling relating to the various acts of unlawful discrimination and harassment she was suffering at the hands of Plaintiff's supervisors, who were all white men.

5.     From July 6, 2022 - October 9, 2022, Plaintiff's first level supervisor was RMO Justin Gordon ("CDR Gordon"), active duty military, Commander, O-5; however, effective October 10, 2022, CDR Gordon became Plaintiff's second level supervisor. CDR Gordon is a white male.

6.     From December 2019 until June 9, 2022, RMO Commander, Michael S. Miller ("CDR Miller"), active duty military, O-5, served as Plaintiff's first level supervisor. (ROI-I, 318). CDR Miller is a white male. *Id*.

7.     From October 10, 2022 until the present RMO Lieutenant Commander Brian Miller ("Lt. CDR B. Miller"), active duty military, has served as Plaintiff's first level supervisor. (ROI-II, 187). RMO Lt. CDR Miller is a white male. *Id*.

8.     From April 2021 - February 28, 2022, RMO Talmadge Seaman ("Mr. Seaman") (GS-0510-15) served as the Office Chief of the Office of Internal Controls, CG-85. Commencing March 1, 2022 - May 31, 2022, Mr. Seaman assumed a detail as Deputy Comptroller. He returned to his Office Chief position at CG-85 on June 1, 2022 and served in that position until the end September 2022. Mr. Seaman was then "laterally assigned" to a permanent position as the Deputy Comptroller. ROI-1, 305. While detailed, CDR Miller served as Plaintiff's first and second level superiors. *Id*. Mr. Seamon is a white male. *Id*.

9.     In May or June, 2022, Mr. Seaman admits he knew Plaintiff's EEO complaint. (ROI-1, 306 - "I learned of this complaint in May or June 2022.").

10.    On July 15, 2022, EEO Counselor Hunter interviewed Mr. Seaman about Plaintiff's then specific allegations relevant to, *inter alia*, a five (5) day suspension imposed by Seaman against Plaintiff on July 6, 2022 as a result of Plaintiff's alleged failure to share and provide full, detailed access to her Microsoft Outlook (or "Team Lead CG Network Calendar"). (ROI-1, 38).

11.    On or about July 26, 2022, EEO Counselor informed CDR Miller of Plaintiff's informal EEO complaint and related concerns. *Id*.

12.    The issues raised during the counseling period are as follows (ROI-1, 36):

Whether the aggrieved party (AP) was discriminated against based on race (African American), National Origin (Nigeria), color (Black), sex (female) and reprisal (no previous EEO activity) when on:

1. On 2-June-22, the AP was issued a letter of reprimand by her supervisor for not sharing her calendar.

2. On 9-June-22, the AP was issued a notice of proposed suspension by her supervisor (CDR Michael Miller) for not sharing her calendar.

3. Prior to July 4, 2022, the Talmadge Seaman threatened to move forward with her suspension if she continued to not share her calendar.

4. On or before 25-July-22, the AP was suspended for 5 days for failure to follow instruction.

13.    On August 1, 2022, because Plaintiff's no resolution was reached regarding Plaintiff's informal EEO complaint, she was issued a Notice of Right to File a Formal Complaint of Discrimination.  (ROI-1, 39, 46).

14.    Plaintiff duly and properly filed her Formal Complaint of Discrimination on August 11, 2022; and, the same was acknowledged by the Agency on September 28, 2022.  (ROI-1, 52).

15.    In filing her Formal Complaint, Plaintiff alleged discrimination based upon race, sex and national origin, retaliation and harassment, which was assigned Case No. DHS/CG Case No.: HS-USCG-02411-2022 by the Agency (the "Formal Complaint" or the "Administrative Complaint").

16.    On September 28, 2022, the Agency "accepted" the following issues for investigation:

1.    Whether Complainant was discriminated against on the bases of race (African American), color (black), national origin (Nigerian), sex (female), and reprisal (participation) when on July 18, 2022, Complainant was suspended for five days by the Office of Internal Controls Chief.

2.    Whether Complainant was subjected to harassment (non-sexual) on the bases of race (African American), color (black), national origin (Nigerian), sex (female) and reprisal (participation) from March 14, 2022 - July 25, 2022.   Some events that were provided as examples to support this claim include:

a. On March 14, 2022 and April 8, 2022, Complainant's telework request was denied by the Office of Internal Controls Deputy Office Chief.

b. From April 11, 2022 - May 5, 2022, Complainant was given unreasonable deadlines, sent multiple text messages and emails during scheduled training [sic], while on leave by the Office of Internal Controls Deputy Office Chief and Office of Internal Controls Chief.

c. On May 24, 2022, Complainant was issued a Letter of Caution by the Office of Internal Controls Deputy Office Chief.

d. On May 24, 2022 and June 2, 2022, Complainant was issued direct orders to share her Outlook calendar by the Office of Internal Controls Deputy Office Chief.

e. On June 21, 2022 and June 24, 2022, Complainant's emails were scrutinized by the Office of Internal Controls Chief.

f. On July 18, 2022, Complainant was suspended for five days by the Office of Internal Controls Chief.[4]

---

[4] The Agency dismissed Issues 3 (timeliness) and 4 (pursued via the negotiated grievance process) comprised of "prior discriminatory acts." While that decision is not being challenged here, the underlying facts relevant to Issue No. 3 (denial of telework request on March 14, 2022 and April 8, 2022) may be used herein by Plaintiff as background evidence but not as substantive claim.  *See ROI-1, 53-54.*

17.     On or about December 8, 2022, the EEO Report of Investigation ("ROI") regarding Plaintiff's Formal Complaint HS-USCG-02411-2022 delivered to the Agency. (ROI-1, 003).

18.     On or about December 15, 2022, Plaintiff duly and timely filed her Request for a Hearing with an Administrative Judge in the EEOC's Washington Field Office ("Request for Hearing") concerning complaint DHS/USCG Case No: HS against the DHS/U.S. Coast Guard.  That filing was made by Plaintiff in accordance with written instructions given by the Agency.  On even date, the EEOC, WFO, acknowledged receipt of the same.  A true copy of the Request for Hearing was duly and timely served upon the Agency.

19.     EEOC assigned the matter case number 570-2023-00300X, and an Acknowledgement Order was entered on December 27, 2022.

20.     EEOC Administrative Judge Christian A. Malik was assigned to hear the matter and an initial scheduling order was entered April 18, 2023.

21.     Plaintiff contacted an Agency EEO counselor regarding a new discrimination/retaliation matter on or about January 27, 2023. (ROI-2, 00022-24).

22.     Plaintiff raised the following issues for EEO counseling:

> Was the AP discriminated on the basis of reprisal (HS-USCG-02411-2022, 11-Aug-22) when on:
>
> > 1. 15-Sep-22, CDR Justin Gordon required AP to be in the office four days per pay period which contradicts AP's telework agreement on file.

2. 08-Nov-22, an employee of CG-85, Lonsdale Fredericks, called AP to yell and curse at her for involving him in an EEO complaint.

3. On or around 22-Dec-22, AP did not receive a monetary award for the evaluation period in FY22.

4. 26-Jan-23, AP received a seven-day (7) suspension from supervisor, Mr. Talmadge Seaman, due to teleworking on unauthorized days in July, August, and September.

5. 26-Jan-23, AP's telework authorization was removed for one year by CDR Gordon.

*Id.*

20.     The second EEO matter was not resolved; therefore, on or about April 13, 2023, Plaintiff received a Notice of Right to File Formal EEO Complaint. (ROI-2, 0029).

21.     On or about April 21, 2023, Plaintiff duly filed her second Formal Complaint of Discrimination (the "Second Formal Complaint"). (ROI-2, 00018).

22.     The Second Formal Complaint was acknowledged by the Agency on April 21, 2023, and assigned Case No.: HS-USCG-00810-2023.  (ROI-2, 00045).

23.     On May 10, 2023, the Agency "accepted" the Second Formal Complaint and assigned the following issues for investigation (ROI-2, 00042-43):

Whether Complainant was subjected to harassment (non-sexual) on the basis of reprisal when from [sic] January 9 - 26, 2023. Some events that were provided as examples to support this claim include:

1.     On January 9, 2023, Complainant was told it was inappropriate for her to tell a harasser to stop harassing and intimidating her by the agency.

    2. On January 9, 2023, Complainant's telework agreement was revoked by the agency.

    3. On January 26, 2023, Complainant was suspended for 10 days by the agency.

24.    On July 10, 2023, ROI-2 was completed and forwarded to the Agency and Complainant without instructions.

25.    On July 14 2023, the Agency filed ROI-2, regarding Case No.: HS-USCG-00810-2023, in and with EEOC Case No. 570-2023-00300X for purposes of consolidating Case No.: HS-USCG-00810-2023 with Case No.: HS-USCG-02411-2022.

26.    More than 180 days have elapsed since Plaintiff filed her Formal Complaint on August 11, 2022.

27.    More than 180 days have elapsed since Plaintiff filed her Second Formal Complaint on April 21, 2023

28.    Plaintiff's two (2) Formal Complaints coupled with all allegations and background facts related thereto are ripe for adjudication in this federal court in accordance with, *inter alia,* 29 C.F.R. 1614.407.

29.    Plaintiff has duly exhausted her administrative remedies and any other conditions precedent to the prosecution of this Civil Action.

30.    On November 27, 2023, Plaintiff duly filed a Notice of Intent to File Civil Action in the appropriate U.S. District Court (the "Notice") and Request for Withdrawal of Request for Hearing before EEO Administrative Law Judge.

31.    Therein, Plaintiff requested that his Request for Hearing before an EEOC Administrative Judge be withdrawn, permitting Plaintiff to file and maintain this civil action in the U.S. District Court.

## PARTIES

27.    Plaintiff has been a federal civilian employee for over five (5) years; she has been an employee of the Agency since 2020.

28.    Her work performance has been and is beyond reproach.

29.    Plaintiff's overall performance appraisals for performance years 2021, and 2022 were all "Exceeded," which is the highest possible performance rating offered by the Agency for civilian employees. Her mid-cycle performance review reveals consistent performance at the "Exceeded" level.  As a result of Plaintiff's outstanding work performance, Plaintiff has received several monetary performance awards.

30.    Plaintiff is the only Nigerian, Black woman in her unit serving as a "Team Lead," under the supervision of the RMOs.

31.    Plaintiff is the only  Nigerian, Black woman in her unit under the supervision of the RMOs.

32.    Carmen Pealstein ("Mrs. Pearlstein") is a white woman, who is an accountant, GS-0510-14, Team Lead within Plaintiff's work unit, under the supervision of the RMOs.

31.    Alejandro Mayorkas is the current Secretary of the U.S. Dept. of Homeland Security, and a member of the Executive Branch of the U.S. Government. Secretary Mayorkas is, upon information and belief, a latino male.  He is sued herein exclusively in his official capacity, as the head of the U.S. Dept. of Homeland Security.

32.    Upon information and belief, other employees and officials who are known and unknown at this time colluded with the RMOs.  In that vein, Seaman, CDR Miller, CDR Gordon, and LCDR B. Miller each colluded with the other in their effort to intentionally discriminate and retaliate against Plaintiff and create a hostile work environment.

## FACTS COMMON TO ALL COUNTS

### Case No.: HS-USCG-02411-2022

33.    Around April 21, 2022, CDR Miller commenced targeting Plaintiff.  He specifically focused on Plaintiff's Microsoft Outlook Calendar, demanding that only Plaintiff grant CDR Miller "access to the detailed view of" said calendar.  Plaintiff had provided and was providing CDR Miller with a limited view of her Outlook Calendar and was simultaneously providing the substance of the information available by the Outlook Calendar's detailed view on the unit's CG-85 calendar.

34.    On or about May 5, 2022, Plaintiff told CDR Miller in writing she believed she was being harassed.

35.    On or about May 24, 2022, CDR Miller became even more aggressive towards Plaintiff.  CDR Miller issued a written Direct Order addressed only to

Plaintiff instructing that she grant him full access to her Outlook Calendar or be subject to disciplinary action, including but not limited to "removal from federal service." (ROI-1, 154).

36.     At that time, CDR Miller knew that certain of Plaintiff's peers, including, but not limited to, Mrs. Pearlstein (who like Plaintiff) had only offered CDR Miller with a limited view of her Outlook Calendar; however, at no point did he ever impose discipline on Mrs. Pearlstein, or even threaten her with any disciplinary or adverse action.

37.     At that time, no internal policy or administrative instruction existed mandating that Team Leads or other employees within Plaintiff's unit maintain an Outlook Calendar, let alone afford their superiors with unfettered access thereto.

38.     At that time, no written internal Agency policy, rule, instruction or practice described the type, nature, details and other information mandated for inclusion in or on an Outlook Calendar, or a process for an employee or Team Lead within Plaintiff's unit to opt-out of or elect not to employ the Outlook Calendar or any other e-calendaring system.

39.     Situationally, CDR Miller's request and demands were unfounded because Plaintiff was indeed performing her work, expertly, timely and completely and she was duly responsive to her superiors' requests.

40.     Plaintiff informed her Union President, Dr. Lydell M. King, AFGE Local 1495 ("Dr. King"), of CDR Miller's discriminatory, aberrant behavior, which was changing the terms, privileges and conditions of her employment.

41.    On May 24, 2022,  Dr. King issued a "cease and desist" letter to CDR Miller stating that the "Agency is enforcing a new policy/requirement that has not been properly vetted through the Union" regarding CDR Miller's demands that Plaintiff's employ and give unbridled access to her Outlook Calendar or be subject to adverse action. (ROI-1, 142).

42.    On or about May 27, 2022, CDR Miller and the Agency received Dr. King's "cease and desist" request; however, CDR Miller and the Agency wilfully ignored Dr. King's request and ratcheted its effort to unlawfully discriminate against Plaintiff.  (ROI-1, 141).[5]

43.    On or about June 9, 2022, with the condonation of Mr. Seaman, CDR Miller issued Plaintiff a discriminatory Notice of Proposed Suspension based on Plaintiff's alleged "failure to share [her] Microsoft Outlook [sic] by 6 June 2022. You failed to follow instructions."

44.    On June 29, 2022, Lt. CDR Brian Miller issued voluntary "business rules" to Plaintiff's unit encouraging for the first time, but *not* mandating, use and sharing of the Outlook Calendar vice the CG-85 calendar.  (ROI-1, 174-175).   Lt. CDR Miller admitted that he found it "difficult" to use the "CG-85 [calendar] due to the inconsistencies in how each of us uses the tool…."   Lt. CDR Brian Miller did *not* mandate that Plaintiff's entire work unit employ the Outlook Calendar to list certain work related activities because he employed the phrase "*should be* added to your individual outlook calendar …," vice mandatory language of "must be …."  *Id*.

---

[5] On June 2, 2022, CDR Miller issued Plaintiff yet another wrongful "Direct Order."  ROI-1, 156.

45.    Similarly, Lt. CDR Miller at ¶ 7 of the "business rules" speak to an employee's "sharing" of their Outlook Calendar, as follows:

> All Individual outlook calendars *should* be shared [sic] with the Deputy Office Chief and the Office Chief.

Id. (Emphasis supplied).

46.    "Should" as employed by Lt. CDR B. Miller constitutes non-mandatory language, as a matter of law.  *See Cmty. Fin. Servs. Ass'n of Am., Ltd. v. Fed. Deposit Ins. Corp.*, 132 F. Supp. 3d 98, 120 (D.D.C. 2015) ("In addition, the documents consistently use non-mandatory language such as 'should,' rather than 'shall' or 'must.' *See e.g.,* FIL–127–2008; OCC Bulletin 2013–29; *see also Holistic Candlers & Consumers Ass'n v. F.D.A.,* 664 F.3d 940, 944 (D.C.Cir. 2012) (use of 'should' and 'may' make plain that 'there has been no order compelling the appellants to do anything') (internal citation omitted).").

47.    CDR Miller and the Agency then knowingly, purposefully and intentionally employed an impermissible, discriminatory "double standard" respecting Plaintiff.  CDR Miller directly and sternly ordered Plaintiff to use, and afford him full access to, her Outlook Calendar; whereas, Plaintiff's peers and other Team Leads received "no order compelling [them] to do anything."

48.    On July 6, 2022, Mr. Seaman rubber stamped the Notice of Proposed Suspension issuing a meritless, discriminatory and retaliatory five (5) day suspension.  Mr. Seaman admittedly had actual knowledge of Plaintiff's EEO

activity and the wrongful suspension was issued on the heels of his learning of Plaintiff's contact with the Agency's EEO counselor in late May, 2022.

49.    Additionally, Mr. Seaman misapplied the "Douglas Factors" and imposed excessive, unjustified penalties in violation of settled law and Agency policy or otherwise violated Agency policy in issuing the five (5) day suspension.

50.    The Agency continued its scheme to humiliate, embarrass and discriminate against Plaintiff by changing the terms, privileges and conditions of her work.

## Case No.: HS-USCG-00810-2023

51.     Plaintiff met with CDR Miller regarding her telework arrangement on April 28, 2022.

52.    CDR Miller's notes confirm that Plaintiff and CDR Miller "agreed" on even date that Plaintiff would have three (3) telework days each week "through the end of the fiscal year," i.e., September 30, 2022.

53.    Plaintiff worked a "compressed" work schedule entitling her to one (1) regular day office ("RDO") each pay period or every two weeks.  During the meeting, CDR Miller does not recall any discussion regarding treatment of the RDO as either a telework day or report to office day.

53.    CDR Miller admitted in the administrative record and treated the RDO as an "office day" versus a telework day.

54.    The Telework Agreement (the "Agreement") was completed and signed on or about April 28, 2022.  Plaintiff interpreted the Agreement, consistent with her

agreement with CDR Miller, to mean she was permitted six (6) telework days pay period (i.e., three (3) telework days each week),[6] and four (4) office days each pay period (i.e., two (2) office days each week) with her RDO treated as an office day. Therefore, Plaintiff was only required to actually physically report to the office one three (3) days each pay period.

55.     From April 28, 2022 until September 15, 2022, Plaintiff tele-worked six (6) days each pay period and physically reported to the office on three (3) days during the pay period.

56.     All of Plaintiff's time sheets for said time period were approved by the RMOs.  CDR Gordon even approved Plaintiff's September 15, 2022 timesheet; until, thereafter, he noticed what he construed to be a discrepancy.

56.     CDR Gordon "counseled" Plaintiff regarding his misconstruction of the written Telework Agreement; however, after Gordon counseled Plaintiff on September 15, 2022, using his inaccurate interpretation of her written Telework Agreement, she immediately followed his instructions to avoid his wrath or imposition of sanctions.

57.     Gordon believed that Plaintiff was obligated to report to work at least four (4) days each pay period and telework five (5) days. Gordon erred, however, when he refused to treat Plaintiff's RDO as an office day. Indeed, CDR Miller told investigator H.K. Turner that on March 22, 2022, he informed his CG-85 Team Leads that "they were expected to be in the office at least three (3) days per week….

---

[6] A pay period is every two (2) weeks.

For individuals working a Compressed Work Schedule ("CWS") their RDO would count as an office day."

58.     Plaintiff believed she and CDR Gordon had reached an accord that perhaps she and CDR Miller made a mutual mistake or had a misunderstanding regarding the interpretation of the Telework Agreement.  CDR Gordon remained mute on this matter from September 15, 2022 until December 5, 2022.

59.     Note, after October 9, 2022, CDR Gordon ceased serving as Plaintiff's first level superior and all disciplinary actions taken or initiated by him against Plaintiff thereafter violated USCG Commandant Instruction M 12750.4A, Ch. 2 (D), p. 2-1 (ROI-2, 358).

60.     On November 8, 2022, Plaintiff received a call on her personal cellular phone from an unhinged Lonsdale Fredericks ("Mr. Fredericks") (Black male), who is a fellow Team Lead in Plaintiff's unit.  Plaintiff had noted Mr. Fredericks as a witness in her EEO Case No: HS-USCG-02411-2022.  In fear of retaliation for testifying against the RMOs (who are also his superiors),[7] Mr. Fredericks berated and cursed Plaintiff for providing his name to the EEO Investigator investigating her Case.  He accused Plaintiff of not earning her job based upon her merits, accused her of being privileged, "entitled" and "ungrateful."  (ROI-2, 215).  Plaintiff was distraught and humiliated by Mr. Fredericks' actions and words and later issued correspondence to Mr. Fredericks on or about December 15, 2022, instructing

---

[7] In his written statement solicited by CDR Gordon from Mr. Fredericks, Mr. Fredericks reveals his fear of retaliation if he testified against the RMOs by stating: "I told Ebaide that in addition to me wanting a GS-14 promotion, CG-85 Management still has authority over my Performance Evaluation."  ROI-2, 215. Note, at no time did CDR Gordon *ever* request a statement from Plaintiff regarding Mr. Fredericks' November 8, 2022 call to Plaintiff, evidences, *inter alia*, disparate treatment.

him to cease and desist and informing him that his actions constituted unwelcome harassment.  (ROI-2, 216)

61.    On November 8, 2022, Mr. Fredericks then called CDR Gordon claiming that he did not want to participate in Plaintiff's EEO Investigation.  While CDR Gordon claims he told Mr. Fredericks he was required to cooperate with the EEO Investigator, CDR Gordon falsely reported in this record herein that he took "timely and appropriate administrative action" against Mr. Fredericks for contact Plaintiff.  ROI-2, 305.

62.    However, CDR Gordon took *no* administrative action against Mr. Fredericks.  In response to the EEO Investigator's question where you reprimanded, counseled or disciplined by CDR Gordon, Mr. Fredericks testified under oath, as follows: "All *Justin* told me on November 8, 2022 was that I needed to talk to the Investigator concerning Ebaide's EEO Investigation. On December 19, 2022, Justin told me to not respond to Ebaide's email that she sent me on December 15, 2022." ROI-2, 211.  Orally informing an employee to communicate with an EEO Investigator and ignore a colleague does *not* constitute "administrative action" in response to *bona fide* harassment allegations.

63.    Reflecting his bias and retaliation, CDR Gordon actually counseled Plaintiff (the victim of Mr. Fredericks' harassment) in writing, on the other hand. ROI-2, 305-307.  On January 9, 2023, CDR Gordon wrote, *inter alia*:

> Your direct communication with Lonsdale on 15Dec22 regarding your concerns with the 08Nov22 conversation was not appropriate. If a coworker demonstrates inappropriate and/or aggressive behavior, you are instructed to report the matter to a member of

management/security, not to engage on the matter directly….

64.    CDR Gordon in essence counseled Plaintiff for telling her abuser to cease and desist, yet coddled her perpetrator, Mr. Fredericks, or condoned his actions.

65.    Armed with his knowledge of Plaintiff's EEO activity as of November 8, 2022, CDR Gordon on or about December 5, 2022, issued Plaintiff a meritless, retaliatory Notice of Proposed Suspension (ROI-2, 241) relevant to the misunderstanding or CDR Gordon's misapprehension of the Telework Agreement.

66.    In retaliation, on January 26, 2023 RMO Mr. Seaman rubber stamped the Notice of Proposed Suspension thereby wrongfully imposing a ten (10) day suspension against Plaintiff which was later reduced to seven (7) days.  ROI-2, 234-240.  Plaintiff's Telework Agreement was wrongfully terminated effective January 9, 2023.  ROI-2, 292.

67.    In proposing and imposing this suspension, and in terminating Plaintiff's Telework Agreement, the RMOs and indeed the Agency violated the Master Labor Agreement ("MLA"), Art. 9, § 9.07(B).  Article 9, § 9.07(B) mandates counsel employees "about specific problems before effecting removal/suspension from the program."  After Plaintiff was counseled on September 15, 2022, she did *not* violate or allegedly violate the Telework Agreement.  Therefore, Plaintiff was deprived of the protections provided by the MLA and seven day suspension and termination of the Telework Agreement violated settled Agency policy.

68.     The Agency is liable under Title VII for the aforestated harassment and discrimination because it knew, or should have known, of the harassment based upon Plaintiff's gender, race, national origin and EEO activity and discrimination but failed to take prompt and effective remedial action.  Instead, it did just the opposite.  It condoned, ratified and otherwise allowed the harassing and discriminatory behavior to continue in violation of Title VII,  including the Agency's own anti-discrimination and anti-harassment policies and regulations.

69.     As a result of Plaintiff's good faith Formal Complaint and opposition to said discrimination and harassment, the Agency, by and through its senior managers and executives have engaged in other acts and/or omissions constituting unlawful retaliation in violation of Title VII, including the Agency's own anti-retaliation regulations.

70.     Plaintiff has suffered severe emotional distress, physical pain and suffering, embarrassment, loss of enjoyment of life and humiliation due to the severe or pervasive hostile working environment and the ongoing abject discrimination or retaliation, as described above.  Plaintiff has incurred attorney's fees and expenses.

### COUNT I (VIOLATION OF TITLE VII -  DISCRIMINATION BASED UPON GENDER, RACE OR NATIONAL ORIGIN)

71.     Plaintiff incorporates each and every allegation set forth in paragraph nos. 1-70.

72.     Plaintiff was discriminated against because of her race, gender or national origin.

73.    Defendant, through its duly authorized agents, supervisors, managers, executives and employees and other persons known and unknown, acted intentionally, wilfully or in reckless disregard for Plaintiff's Civil Rights under Title VII by subjecting her to unlawful racial, gender and national origin discrimination.

74.    Plaintiff's peers, who were similarly situated, were treated differently from Plaintiff in that they were not discriminated against by Defendant or its agents, supervisors, managers, executives and employees and other persons known and unknown.

75.    The discriminatory actions and omissions committed by Defendant, through its duly authorized agents, supervisors, managers, executives and employees and other persons known and unknown, were materially adverse and changed the terms, conditions, privileges or immunities of her employment.

76.    The stated reasons for misconduct of Defendant, by and through its duly authorized agents, supervisors, managers, executives, and employees, were not the true reasons for the actions or omissions at issue, but were instead a mere pretext to hide the Defendant's discriminatory animus.

## COUNT II (VIOLATION OF TITLE VII - HOSTILE WORK ENVIRONMENT)

77.    Plaintiff incorporates each and every allegation set forth in paragraph nos. 1-76.

78.    Plaintiff was harassed because of her race, gender, national origin or because she engaged in EEO activity by Defendant through its duly authorized

agents, supervisors, managers, executives and employees and other persons known and unknown.

79.     The discriminatory statements, threats, investigations and other conduct alleged herein were unwelcome, sufficiently severe or pervasive to detrimentally affected Plaintiff and were perceived or viewed by Plaintiff as subjectively hostile and abusive and would be viewed as such by a reasonable person.

80.     Plaintiff complained numerous times to Defendant's supervisors and managers about racial discrimination, retaliation or harassment and requested, *inter alia*, that the harassing misconduct cease and desist.

81.     Defendant had actual or constructive knowledge of the ongoing discrimination, retaliation or harassment to which Plaintiff was being subjected.

82.     However, Defendant's duly authorized supervisors, managers, and executives failed to take prompt and appropriate remedial action to prevent or correct further discrimination and harassment of Plaintiff.

## **RETALIATION**

83.     Plaintiff incorporates each and every allegation set forth in paragraph nos. 1-82.

84.     Plaintiff engaged in protected activity when she filed her Formal Complaints, and when she engaged in other EEO protected activity or opposed unlawful discrimination and harassment in various and sundry ways stated herein, and as follows: (a) on **October 31, 2022**, when she submitted email to Elizabeth

Mercado-Prioleau, EEO Specialist of the Civil Rights Directorate, complaining of "continuous" harassment and retaliation by RMO Seaman;  (b) on **December 3, 2022**, when she signed and submitted her EEO Investigative Affidavit in CaseNo.:HS-USCG-02411-2022; c) on December 5, 2022, two (2) days after she signed and submitted her Affidavit, and twenty-seven (27) days after she complained on November 8, 2022, to CDR Gordon about Lonsdale Fredericks' harassment, she was issued a meritless Notice of Proposed Suspension in retaliation; (d) on **December 8, 2022**, when she submitted correspondence to the EEO Office seeking to amend her Formal Complaint to allege retaliation related to the December 2, 2022, meritless Notice of Proposed Suspension; (e)  on or about **January 23, 2023**, she engaged in EEO protected activity when she contacted Ms. Prioleau seeking permission to amend her Formal Complaint to again allege retaliation.

85.    In retaliation for Plaintiff having filed her Formal Complaints or thereafter engaging in EEO protected activity or opposing unlawful discrimination and harassment, Defendant through its duly authorized agents, supervisors, managers, executives and employees and other persons known and unknown, subjected Plaintiff to various acts of retaliation as alleged herein, including, but not limited to: (a)  on July 6, 2022, issuing Plaintiff a meritless Notice of Suspension related to the Outlook Calendar matter; (b) on January 26, 2023, when RMO Mr. Seaman rubber stamped the Notice of Proposed Suspension thereby wrongfully imposing a ten (10) day suspension against Plaintiff which was later reduced to

seven (7) days; c) Plaintiff's Telework Agreement was wrongfully terminated effective January 9, 2023; (d) on or about January 9, 2023, when Plaintiff was subjected to disciplinary type counseling by CDR Gordon in response to her instruction to Mr. Fredericks to cease and desist harassing her.

86.    There was a causal connection between Plaintiff's protected activity and the adverse actions taken against Plaintiff by Defendant, through its duly authorized agents, supervisors, managers, executives and employees and other persons known and unknown.

87.    The adverse actions taken against Plaintiff by Defendant's agents, supervisors, managers and executives (and the cumulative effect of such actions within context) would dissuade a reasonable employee from making complaints of discrimination or participating in EEO protected activity.

88.    Defendant, through its duly authorized agents, supervisors, managers, executives and employees and other persons known and unknown, retaliated against Plaintiff for engaging in EEO protected activity in violation of Section 704(a) of Title VII, 42 U.S.C. Section 2000e-3(a).

## DAMAGES

Because of statutorily impermissible and willful, if not malicious, acts of the Defendant and its duly authorized agents, supervisors, managers, executives and employees, Plaintiff has suffered loss of income, loss of benefits, loss of career opportunity, loss of career investment, and loss of advancement pursuant to Title VII of the Civil Rights Act of 1964 and 1991, as amended and codified at 42 U.S.C.

§2000e, *et seq.* ("Title VII").   As a consequence of the unlawful and outrageous actions of Defendant through its duly authorized agents, supervisors, managers, executives and employees, Plaintiff has suffered humiliation, loss of standing in the community, emotional pain and suffering, inconvenience, loss of enjoyment of life, irritation and mental anguish.  Plaintiff seeks compensatory damages and equitable relief, as well as attorney's fees, and costs and pre and post judgment interest in the maximum amounts allowed by law pursuant to Title VII of the Civil Rights Act of 1964 and 1991, as amended and codified at 42 U.S.C. §2000e, *et seq.*

## PRAYER FOR RELIEF

Based upon all the allegations stated herein, Plaintiff, Ebaide Esoimeme, prays for: (a) compensatory damages in the maximum amount permitted under law, Three Hundred Thousand Dollars ($300,000.00);  (b) an award of her attorney's fees, costs and expenses associated with this matter, plus interest; c) expungement of all adverse or disciplinary actions; and (d) such other and further relief as this Court deems meet.

## A JURY TRIAL IS HEREBY DEMANDED

Respectfully Submitted,
Ebaide Esoimeme

**BAKER SIMMONS**
**Attorneys at Law**
**800 Connecticut Avenue, N.W., Suite 300**
**Washington, D.C. 20006 Telephone: 202.775.0050  Facsimile: 202.204.5784**
**Email: richardcbaker@aol.com; baker@bakersimmonslaw.com**

By: */S/RICHARD CARNELL BAKER*
Richard Carnell Baker, D.C. Bar 451190 and VA Bar No.: 28854
Amana Thompson Simmons, Maryland Bar and VA Bar No.:41901
Counsel for Plaintiff
**Dated: November 27, 2023**